**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| OFFICIAL COMMITTEE OF | ) | |
| UNSECURED CREDITORS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 1:18-cv-00068-NT |
| | ) | |
| CALPERS CORPORATE PARTNERS | ) | |
| LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTIONS *IN LIMINE***

Lincoln Paper and Tissue LLC ("**LPT**") operated a pulp, paper, and tissue manufacturing mill in Lincoln, Maine. It filed for bankruptcy in September of 2015. In this action, the Plaintiff seeks to avoid and recover two distributions made by LPT to members of its parent company, LPT Holding LLC. Trial is set to begin on August 5, 2021.

The Plaintiff has filed two motions *in limine* (ECF Nos. 258 and 259), and the Defendant has filed three motions *in limine* (ECF Nos. 298, 299, and 300). The Court's rulings on these motions are set forth below.

**I.     Plaintiff's Motions *In Limine***

**A.     Lenny Rendell**

Plaintiff Official Committee of Unsecured Creditors ("**Plaintiff**" or "**the Committee**") has moved *in limine* to exclude the testimony of Lenny Rendell at trial (ECF No. 259). For the reasons set forth below, the Plaintiff's motion is **DENIED**.

### 1.    Background

Mr. Rendell is an employee of Berry Dunn McNeil & Parker LLC ("**BerryDunn**"). Pl.'s Mot. *in Limine* to Exclude Testimony of Lenny Rendell ("**Pl.'s Mot.**") 1 (ECF No. 259). BerryDunn is a financial consulting firm that audits the financial statements of its clients using generally accepted accounting principles ("**GAAP**"). Pl.'s Mot. 1. Relevant to this case, BerryDunn served as the auditor for LPT and issued an audit opinion for LPT for the year ending on December 31, 2013 (the "**2013 Audit**"). Pl.'s Mot. 1.

BerryDunn designated Mr. Rendell as its designee under Federal Rule of Civil Procedure 30(b)(6), and Mr. Rendell was deposed on June 12, 2019. Pl.'s Mot. 1; *see also* Dep. of Lenny Rendell (ECF No. 259-1). At that deposition, Defendant CalPERS Corporate Partners LLC ("**Defendant**" or "**CCP**") questioned Mr. Rendell about the valuation of LPT's assets and liabilities, whether LPT was a "going concern," whether BerryDunn qualified the 2013 Audit based on going concern matters, and LPT's solvency. *See* Pl.'s Mot. 1–2. CCP has indicated that it plans to call Mr. Rendell as a witness at trial, which is set to begin on August 5, 2021. Pl.'s Mot. 1.

The Plaintiff asserts three reasons why Mr. Rendell's testimony should be excluded. First, the Plaintiff argues that Mr. Rendell is providing expert opinion testimony, but he was not disclosed as an expert by the Defendant. Pl.'s Mot. 2. Second, the Plaintiff argues that Mr. Rendell's testimony is also inadmissible as lay witness opinion testimony because his opinions "are the product of his specialized knowledge and the application of technical rules imposed by GAAP." Pl.'s Mot. 3.

Finally, the Plaintiff argues that any non-opinion testimony from Mr. Rendell would be irrelevant, cumulative, and confusing to the jury. Pl.'s Mot. 3–4.

The Defendant responds that Mr. Rendell is not being called as an expert witness. Def.'s Obj. to Pl.'s Mot. *in Limine* to Exclude Testimony of Lenny Rendell ("**Def.'s Opp'n**") 2 (ECF No. 303). Rather, the Defendant contends that Mr. Rendell "is a percipient fact witness with personal knowledge about the audit of LPT's finances during the very time period at issue in this case," adding that "to the extent his testimony may contain opinion, it is admissible lay opinion." Def.'s Opp'n 2.

At the Plaintiff's request, *see* ECF No. 305, the Court heard brief oral argument on this motion on July 27, 2021. The Plaintiff reiterated at that time that the 2013 Audit was not released until after the second challenged distribution.

## 2.     Legal Standard

The Federal Rules of Evidence provide that a witness may testify if he "has personal knowledge of the matter." Fed. R. Evid. 602. An expert witness—qualified "by knowledge, skill, experience, training, or education"—may also "testify in the form of an opinion or otherwise" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. And a witness who is not testifying as an expert may offer testimony in the form of an opinion if that opinion is:

> (a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. The determination of whether a witness's "testimony falls within the scope of Rule 701 . . . or Rule 702 . . . does not depend on the identity of the witness, but rather on the nature of the testimony itself." *Portland Pipe Line Corp. v. City of S. Portland,* 288 F. Supp. 3d 321, 336 n.10 (D. Me. 2017) (citing Fed. R. Evid. 701 advisory committee's note to 2000 amendment).

Finally, the Rules state that relevant evidence is generally admissible unless a federal statute, constitutional provision, or another rule provides otherwise. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. And a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### 3.    Discussion

I begin with the question of relevance. Mr. Rendell is expected to testify about LPT's financial condition around the time of the challenged distributions, which is at the heart of the issues remaining in this case. Mr. Rendell "was personally involved in auditing LPT's 2013 financials, which included communicating with LPT's management, gathering information from them, and analyzing that information." Def.'s Opp'n 1. He thus "has direct personal knowledge of LPT's financial condition

at the time of the audit," Def.'s Opp'n 1, and he can testify based on that personal knowledge. The Plaintiff suggests that his testimony is irrelevant because Mr. Rendell's analysis of LPT's financial condition in the 2013 Audit was based on GAAP. Pl.'s Mot. 3 n.3. While GAAP may not ultimately control the determination of solvency in the bankruptcy context, balance sheets prepared according to GAAP are often a useful starting point. *See Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, No. 1:13-CV-195 (WLS), 2016 WL 1316685, at *8 (M.D. Ga. Mar. 31, 2016) (courts making solvency determinations are not bound by GAAP); *In re Babcock & Wilcox Co.*, 274 B.R. 230, 260–61 (Bankr. E.D. La. 2002) ("The court concludes that although GAAP principles are relevant, they are neither controlling nor presumptively valid in this case in determining [the debtor's] solvency."); *In re KZK Livestock, Inc.*, 290 B.R. 622, 625 n.3 (Bankr. C.D. Ill. 2002) (citing *In re Kaypro*, 218 F.3d 1070 (9th Cir. 2000)); *see also id.* at 625 (explaining that a solvency determination considers the "fair value of all the debtor's property, compiled by the use of balance sheets, financial statements, appraisals, expert testimony, and other affirmative evidence and compared to the amount of his debts" and that it "will ordinarily begin with audited financial statements" prepared according to GAAP, and "extend to an examination of the financial records of the debtor, including bank account statements, journals, ledgers, tax returns, and all contracts, notes and security agreements"). Moreover, as an independent auditor, Mr. Rendell possesses first-hand knowledge about LPT's financial records during the relevant time period and provides a perspective distinct

from other witnesses. Accordingly, I find that Mr. Rendell's testimony is relevant and that it would not be unnecessarily cumulative or confusing to the jury.

The fact that Mr. Rendell has specialized education and experience does not automatically turn any testimony he gives into expert testimony. *See Portland Pipe Line*, 288 F. Supp. 3d at 335 n.10. As LPT's "accountant with personal knowledge of the company books," Mr. Rendell "may testify about the specific factual information with which he is familiar from his work," including his "personal knowledge based on his ordinary duties." *Campbell v. CGM, LLC*, No. 15-cv-088-JD, 2016 WL 6989769, at *2 (D.N.H. Nov. 29, 2016) ("In the area of a business's financial information, a lay witness may be allowed to testify under Rule 701 based on the witness's own perceptions and knowledge and participation in the day-to-day affairs of the business." (citation and internal quotations omitted)); *see also Wade v. Touchdown Realty Grp., LLC*, 386 F. Supp. 3d 56, 63 (D. Mass. 2019); *Nat'l Starch & Chem. Trading Co. v. M/V STAR INVENTANA*, No. 05-91-P-S, 2006 WL 1876996, at *3 (D. Me. July 5, 2006) ("A witness may testify under Rule 701 about 'inferences that he could draw from his perception' of a business's records, or 'facts or data perceived' by him in his corporate capacity." (quoting *Teen–Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403–04 (3d Cir. 1980))).

The question may become closer if, at trial, the Defendant seeks to elicit opinion testimony from Mr. Rendell. Under Rule 701, a lay witness may not offer testimony in the form of an opinion if it is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). The First

Circuit has explained the distinction between "experiential knowledge that relies on reasoning processes familiar to the average person and more specialized knowledge." *United States v. Vega*, 813 F.3d 386, 395 (1st Cir. 2016) (internal quotations omitted); *see also United States v. Aubrey*, 800 F.3d 1115, 1129–30 (9th Cir. 2015) (holding that district court properly restricted auditor's testimony "to the areas in which he had personal knowledge (the documents, investigation, and the methods he used to prepare his summary) and prevented him from providing in-depth analysis of various accounting methods").

The Defendant has made clear that it will be offering Mr. Rendell as a live witness at trial. It remains to be determined whether the Defendant will seek to elicit testimony from Mr. Rendell that will cross the line from permissible lay witness testimony to impermissible opinion testimony. Because it is premature at this juncture to prohibit Mr. Rendell from testifying, the Plaintiff's motion in limine is **DENIED**, but the Plaintiff remains free at trial to object to questioning that seeks to elicit impermissible lay witness opinion.

### B.    *In Re Bachrach Clothing*

The Plaintiff moves *in limine* to prohibit the Defendant "from cross-examining Plaintiff's expert, Craig T. Elson, about, or otherwise referring to, the decision in *In re Bachrach Clothing, Inc.*, 480 B.R. 820 (Bankr. N.D. Ill. 2012)." Pl.'s Mot. in Limine to Prohibit Def. from Referring to *In re Bachrach Clothing, Inc. Before the Jury* ("**Pl.'s Bachrach Mot.**") 1 (ECF No. 258). The Plaintiff seeks this relief because Mr. Elson was also an expert in *Bachrach* and because the *Bachrach* court was critical of Mr.

Elson's opinion. Pl.'s *Bachrach* Mot. 1–2; *see Bachrach*, 480 B.R. at 859–860. The Defendant has not responded to the motion, and the time to do so has expired.

I agree with the Plaintiff that, for a host of reasons, explicit usage of *Bachrach* is not suitable for cross-examination. "Judicial findings in other cases proffered as evidence are generally characterized as inadmissible hearsay." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001). And while I fail to see how Mr. Elson's opinion in an entirely separate case, or the judicial assessment of that opinion, is relevant in the first place, delving into another judge's analysis of an entirely separate opinion would also necessitate a trial within a trial. *See id.* at 323–24. Thus, even if it were relevant, the likelihood that discussion of the *Bachrach* court's assessment of Mr. Elson's other opinion would confuse the issues and mislead the jury substantially outweighs whatever probative value this evidence might have. *See* Fed. R. Evid. 403. Because it is inadmissible hearsay, it is irrelevant, and it is barred by Rule 403, the motion is **GRANTED**. The Defendant may not question Mr. Elson about his opinion in *Bachrach* or that court's analysis or criticisms of that opinion.

II.     **Defendant's Motions *In Limine***

  A.     **Disputes Between LPT Board Members**

In its first motion, CCP seeks to exclude any evidence or argument from the Committee about "the relationship among the members of the Board of Managers" of LPT and LPT Holding, LLC ("**the Board**"). Def.'s Mot. *in Limine* to Exclude Evidence and Argument about Relations Among Board Members ("**Def.'s First Mot.**") 1 (ECF No. 298). CCP identifies specific exhibits that allegedly contain disparaging remarks

by one Board member about another Board member, as well as designated deposition

testimony related to the "allegedly acrimonious relationship among certain Board

members." Def.'s First Mot. 3–4. CCP also seeks to exclude any trial testimony related

to relationships among Board members. Def.'s First Mot. 4. CCP argues that such

evidence is irrelevant to the question of LPT's financial condition at the time of the

challenged distributions, is "more prejudicial than probative," and would contribute

to "a waste of judicial resources and valuable trial time." Def.'s First Mot. 4–5.

The Plaintiff counters that the evidence it "will introduce regarding Board

relations goes directly to the reliability of management's projections and whether the

Board or Defendant's expert reasonably relied on them." Pl.'s Omnibus Obj. to Def.'s

Mots. *in Limine* ("**Pl.'s Opp'n**") 2 (ECF No. 301). The Plaintiff then cites specific

exhibits[1] that it contends "raise significant doubts about the honesty and competence

of LPT's management" and "undermine the reasonableness of the Board's and

Defendant's expert's reliance on management's projections." Pl.'s Opp'n 3–4.

Based on the exhibit excerpts cited by the Plaintiff, I agree with the Plaintiff

that disputes among the Board members are highly relevant, and I also conclude that

the relevancy of this evidence is not likely to be substantially outweighed by any

danger of unfair prejudice.[2] To the extent that CCP raised relevancy objections to

deposition designations involving acrimony on the Board, those objections have been

---

[1]     In one such exhibit, CCP's managing member who was also on the Board of LPT, described
other Board members as "consistently dishonest." In another, he recounted the Board meeting at which
one of the distributions was approved. *See* Pl.'s Opp'n 3.

[2]     As to CCP's concerns about trial time, I will ensure that each party has an equitable amount
of time to present its case.

9

overruled. *See* Order (ECF No. 334). At about 4 p.m. on July 30, 2021, CCP provided copies of the documents it claims should be excluded. Most were discussed in the deposition of Mr. Herring, and because Mr. Herring is slated to be called as a live witness, I have not reviewed that deposition or the designations to it. Accordingly, I am unable to give a ruling on the specific exhibits at this time. I note however that the exhibits appear to be similar in nature to the emails presented in the other deposition designations that I have already seen and found admissible. I thus deny CCP's motion but note that CCP may object at trial to the introduction of evidence if it differs in kind or degree from the exhibits cited in the Plaintiff's opposition or if it becomes cumulative. Similarly, CCP may object if the Plaintiff offers an exhibit not identified on the Consolidated Exhibit List filed with the Court. *See* ECF No. 331.

### B.     Environmental and Pension Liabilities

In its second motion *in limine*, CCP seeks to exclude any evidence and argument from the Plaintiff about LPT's contingent pension and environmental liabilities. Def.'s Mot. *in Limine* to Exclude Evidence and Argument about LPT's Pension and Environmental Liabilities ("**Def.'s Second Mot.**") 1 (ECF No. 299). CCP anticipates that the Committee will introduce evidence related to environmental and remediation costs asserted against LPT by the United States Environmental Protection Agency ("**EPA**") and the Maine Department of Environmental Protection and withdrawal liability related to LPT's membership in the PACE Industry Union-Management Pension Fund ("**PIUMPF**") pension plan. Def.'s Second Mot. 3. Although CCP acknowledges that the EPA and PIUMPF filed claims in LPT's bankruptcy case, it notes that those claims settled at reduced amounts. Def.'s Second

Mot. 4–5. CCP also reiterates an argument that it has made repeatedly in this case—

that the trigger for these claims was LPT's liquidation in the bankruptcy case. Def.'s

Second Mot. 5. Thus, CCP argues that these claims did not exist at the time of the

challenged distributions and are therefore not relevant to LPT's financial condition

at that time. Def.'s Second Mot. 6. CCP adds that even if this evidence was relevant,

it is more prejudicial than probative because the actual settled amount of the claims

was much smaller than the EPA or PIUMPF initially asserted and because the

Plaintiff has stated that the valuation of these liabilities is not a significant feature

of its expert's opinion. Def.'s Second Mot. 7.

As the Plaintiff points out, CCP has already made this argument—at least with

regard to the PIUMPF liability—in its pretrial briefing, *see* ECF No. 234, and at a

conference of counsel on June 24, 2021, *see* ECF No. 245. At that conference, CCP

made an oral motion for a ruling on the withdrawal liability issue. *See* ECF No. 248.

Although I stated that I considered the withdrawal liability to be relevant to the

Plaintiff's case, I reserved ruling on that motion until trial. *See* ECF No. 249. I have

already ruled on CCP's objections relating to the FERC and PIUMPF liabilities that

were submitted with deposition designations. *See* Order (ECF No. 334). I reserve

ruling on any live testimony regarding these topics, but CCP can expect that I

consider both liabilities generally relevant to the Plaintiff's case.

### C.   LPT's Bankruptcy Proceeding

Finally, in its third motion, CCP seeks to preclude the Plaintiff "from making

certain arguments to the jury about the bankruptcy filing of" LPT. Def.'s Mot. *in*

*Limine* to Preclude Certain Arguments about LPT's Bankruptcy Filing ("**Def.'s**

**Third Mot.**") 1 (ECF No. 300). CCP states that "there is no dispute that LPT filed for bankruptcy," but adds that "there should also be no dispute that LPT's bankruptcy filing does not necessarily mean that LPT was insolvent, undercapitalized or unable to pay its debts as they came due at the time of the" challenged distributions, "or that its financial projections at the time of the [d]istributions were unreasonable." Def.'s Third Mot. 2. CCP states that it "anticipates that Plaintiff will make that very argument to the jury." Def.'s Third Mot. 2. CCP contends that "[a]llowing Plaintiff to make any such argument in front of the jury would have a prejudicial impact," adding that businesses fail for many different reasons. Def.'s Third Mot. 2–3.

I consider the fact of LPT's ultimate bankruptcy to be relevant and part of the story of this case. *See In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG), 2019 WL 3916536, at *2 (D. Del. July 2, 2019) (denying motion *in limine* that sought to exclude references to the bankruptcy proceeding because the bankruptcy was relevant to the plaintiff's fraudulent transfer claims and its probative value was not substantially outweighed by risk of confusing the issues or misleading the jury). In its Reply, CCP clarifies that it "is only requesting the Court to preclude Plaintiff from arguing there is a causal link between the bankruptcy filing and LPTs financial condition and the reasonableness of LPT's projections at the time of the Distributions." Def.'s Reply 2 (ECF No. 304). I agree with CCP that such an argument would be problematic, but note that the Plaintiff has not indicated that it intends to make such an argument. *See* Pl.'s Opp'n 1 (asserting that "evidence about the ultimate bankruptcy of [LPT] is admissible as part of Plaintiff's overall story of the

case"). I order the Plaintiff not to argue to the jury either: 1) that LPT's bankruptcy filing necessitates the conclusion that LPT was insolvent, undercapitalized, or unable to pay its debts as they came due at the time of the Distributions, or 2) that the bankruptcy filing necessitates the conclusion that LPT's financial projections, assumptions, or decisions at the time of the Distributions were unreasonable. Accordingly, CCP's Third Motion is GRANTED.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Plaintiff's motion *in limine* seeking to preclude the Defendant from referring to *In re Bachrach Clothing, Inc.* before the jury (ECF No. 258) and **GRANTS** the Defendant's motion *in limine* seeking to prevent the Committee from making the above identified arguments about LPT's bankruptcy filing (ECF No. 300). The Court **DENIES** the Plaintiff's motion *in limine* seeking to exclude the testimony of Lenny Rendell (ECF No. 259) and **DENIES** the Defendant's motion *in limine* to exclude evidence and argument on disputes among Board members (ECF No. 298). I reserve ruling on the Defendant's motion regarding LPT's environmental and pension liabilities (ECF No. 299).

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 30th day of July, 2021.